**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**
**(Electronically Filed on April 21, 2008)**
**BID PROTEST**

| | | |
|---|---|---|
| THE CNA CORPORATION, | ) | |
| Plaintiff, | ) | No: 08-249C (Judge Horn) |
| v. | ) | |
| THE UNITED STATES, | ) | |
| Defendant. | ) | |

**THE CNA CORPORATION'S REPLY IN SUPPORT OF DECLARATORY AND INJUNCTIVE RELIEF**

Alex D. Tomaszczuk
**PILLSBURY WINTHROP SHAW PITTMAN LLP**
1650 Tysons Boulevard
McLean, VA 22102-4859
(703) 770-7940
(703) 770-7901 (fax)

Counsel for The CNA Corporation

*Of Counsel:*
Daniel S. Herzfeld
**PILLSBURY WINTHROP SHAW PITTMAN LLP**
1650 Tysons Boulevard
McLean, VA 22102
(703) 770-7612
(703) 770-7901 (fax)

Caroline L. Plant
**PILLSBURY WINTHROP SHAW PITTMAN LLP**
725 South Figueroa Street, Suite 2800
Los Angeles, CA 90017-5406

# TABLE OF CONTENTS

I. CNAC HAS ESTABLISHED IT IS AN INTERESTED PARTY UNDER 1491(B)(1) AND HAS STANDING TO BRING THIS SUIT....2

II. THE DISQUALIFICATION LETTER IS RIPE FOR THIS COURT'S CONSIDERATION....3

III. NIH'S ETHICS EVALUATION OF DR. FRIEDMAN IS ARBITRARY, CAPRICIOUS, AND CONTRARY TO APPLICABLE LAW, AND THUS SHOULD BE SET ASIDE....7

IV. THIS COURT HAS AUTHORITY TO GRANT "ANY RELIEF" IT DEEMS NECESSARY....11

V. CONCLUSION....12

# TABLE OF AUTHORITIES

## CASES

*Abbott Labs. v. Gardner*,
387 U.S. 136 (1967)....................5, 6

*Advanced Data Concepts, Inc. v. United States*,
216 F.3d 1054 (Fed. Cir. 2000)....................9

*American Land Title Association v. Clarke*,
743 F. Supp. 491 (W.D. Tex. 1989)....................5, 6

*Commercial Energies, Inc. v. United States*,
20 Cl. Ct. 140 (1990) ....................9

*Dairy Maid Dairy, Inc. v. United States*,
837 F. Supp. 1370 (E.D. Va. 1993) ....................6

*Federal Trade Comm'n v. Standard Oil Co.*,
449 U.S. 232 (1980)....................5, 6

*IGIT, Inc.*,
B-271823, Aug. 1, 1996, 96-2 CPD ¶ 51 (Comp. Gen. 1996)....................8

*Impresa Construzioni Geom. Domenico Garufi v. United States*,
283 F.3d 1324 (Fed. Cir. 2001)....................7

*Motor Vehicle Manufacturers Ass'n v. State Farm Mutual*,
463 U.S. 29 (1983)....................7, 9

*OMV Med., Inc. v. United States*,
219 F.3d 1337 (Fed. Cir. 2000)....................9

*PGBA, LLC v. United States*,
389 F.3d 1219 (Fed. Cir. 2004)....................4

*Ramcor Servs. Group, Inc. v. United States*,
185 F.3d 1286 (Fed. Cir. 1999)....................3

*Robishaw Engineering, Inc. v. United States*,
891 F. Supp. 1134 (E.D. Va. 1995) ....................5, 6

*Seattle Security Servs., Inc. v. United States*,
45 Fed. Cl. 560 (1999) ....................6

**STATUTES, RULES, & REGULATIONS**

5 U.S.C. § 704........................................................................................................4

5 U.S.C. § 706........................................................................................................4

18 U.S.C. § 207......................................................................................................passim

28 U.S.C. § 1491....................................................................................................passim

31 U.S.C. § 3554....................................................................................................11

5 C.F.R. § 2637.201...............................................................................................10

48 C.F.R. § 1.602-2................................................................................................8

48 C.F.R. § 15.306..................................................................................................7

RCFC 52.1 ..............................................................................................................1

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**
**(Electronically Filed on April 21, 2008)**
**BID PROTEST**

| | | |
|---|---|---|
| THE CNA CORPORATION, | ) | |
| Plaintiff, | ) | No: 08-249C |
| | ) | (Judge Horn) |
| v. | ) | |
| THE UNITED STATES, | ) | |
| Defendant. | ) | |

**THE CNA CORPORATION'S REPLY IN SUPPORT OF DECLARATORY AND INJUNCTIVE RELIEF**

Pursuant to this Court's April 9 and 10, 2008 scheduling orders, Plaintiff The CNA Corporation ("CNAC") submits this reply in support of its motion for declaratory and injunctive relief and in response to Defendant, The United States' ("Government") Motion to Dismiss and, in the Alternative, for Judgment upon the Administrative Record ("Govt Brief").[1]

The Government's position on the disqualification of Dr. Friedman, as articulated in its March 19, 2008 Letter ("Disqualification Letter"), the ethics evaluation by the NIH's Office of General Counsel ("Ethics Opinion"), and now its Brief, is contradictory, erroneous, and further evidences the arbitrary and capricious nature of NIH's permanent disqualification of Dr. Friedman pursuant to 18 U.S.C. § 207. On the one hand, the Government asserts that this dispute is not ripe for adjudication because the disqualification of Dr. Friedman only relates to

[1] As a threshold matter, although the Government has moved for judgment upon the administrative record pursuant to RCFC 52.1, at this time there is no administrative record in this case on which to base the Government's Motion. The Government filed a 2,000 page Appendix with its Brief, not an administrative record. Therefore, the Government's Motion is procedurally defective and should be denied.

the 2007 RFP, and CNAC is free to submit a proposal in response to the 2008 RFP. Govt Brief at 19. Then, on the other hand, the Government asserts that NIH's conclusions regarding the permanent disqualification of Dr. Friedman are entirely reasonable, and therefore should not be set aside by this Court. Govt Brief at 25. Not only is this position legally flawed, but it is logically inconsistent, and it further reveals a fundamental misapplication of the law related to the post-employment restrictions on former Government employees.

This Court should grant CNAC's requested relief, as the arbitrary and capricious disqualification of Dr. Friedman by NIH is in connection with a proposed procurement, it constitutes final agency action that is ripe for judicial review, and the Government's arguments to the contrary only further demonstrate the arbitrary, capricious, and irrational nature of the disqualification.

## I. <u>CNAC HAS ESTABLISHED IT IS AN INTERESTED PARTY UNDER 1491(B)(1) AND HAS STANDING TO BRING THIS SUIT</u>

As a threshold matter, the Government asserts that CNAC has not demonstrated it is an "interested party" under 28 U.S.C. § 1491(b)(1) because it has not established "it is objecting to 'an alleged violation of statute or regulation in connection with a procurement or proposed procurement.'" Govt Brief at 13, 17. The Government's position is meritless.

As stated in CNAC's Brief, the procurement at issue in this action is the contract for the NCS Study Center for the Montgomery County Study location ("Montgomery County Contract"), which NIH originally solicited under Request for Proposals No. NIH-NICHD-NCS-07-11 ("2007 RFP"), and now, after failing to make award under the 2007 RFP, has solicited again under Request for Proposals No. NIH-NICHD-NCS-08-21E ("2008 RFP"). CNAC's relationship to the 2008 RFP is clear. As an actual offeror under the 2007 RFP, CNAC would have received award of the Montgomery County Contract under the 2007 RFP if NIH had

properly considered its proposal. CNAC now qualifies as a "prospective offeror" because it intends to submit a proposal in response to the 2008 RFP. CNAC therefore has a direct economic interest in NIH's award of the Montgomery County Contract under the 2008 RFP. Furthermore, CNAC asserts a violation of a statute or regulation in connection with a procurement or proposed procurement, and therefore CNAC has standing to assert this bid protest. *See Ramcor Servs. Group, Inc. v. United States*, 185 F.3d 1286, 1289 (Fed. Cir. 1999) ("The operative phrase 'in connection with' is very sweeping in scope. As long as a statute has a connection to a procurement proposal, an alleged violation suffices to supply jurisdiction.")

## II. <u>THE DISQUALIFICATION LETTER IS RIPE FOR THIS COURT'S CONSIDERATION</u>

NIH has now taken the contradictory position that, although it previously concluded Dr. Friedman is subject to a lifetime ban from acting as a Principal Investigator ("PI") for an NCS Study Center under the 2007 RFP, this lifetime ban – which CNAC is now challenging as arbitrary, capricious, and erroneous – does not prohibit CNAC from submitting a proposal in response to the 2008 RFP for the Montgomery County Contract and having that proposal fairly considered. *See* Govt Brief at 24. Then, in the same breath, the Government states its conclusion that the entirety of the NCS constituted one particular matter was reasonable: "After reviewing the Research Plan and the relevant NCS RFPs, the agency reasonably found that by virtue of the collaborative nature of the NCS, the NCS is not 'analogous to Government programs under which numerous awards having little direct relations to each other are made.'" Govt Brief at 32. Either the whole of the NCS constitutes one "particular matter involving specific parties," as NIH's Ethics Opinion concludes, or it does not. And Dr. Friedman herself is either barred for life from participating as CNAC's PI, or she is not. If NIH has reasonably and lawfully determined that Dr. Friedman is *permanently banned* by 18 U.S.C. § 207 because the

whole of the NCS constitutes "one particular matter" then CNAC is disqualified from utilizing Dr. Friedman as its PI in connection with the Montgomery County Contract under any Solicitation, and NIH's ethics evaluation of Dr. Friedman would remain unchanged under the 2008 RFP. Alternatively, NIH has erred and unreasonably and unlawfully permanently disqualified Dr. Friedman under the 2007 RFP, and that arbitrary and capricious determination should be set aside because NIH has indicated it would "anticipate the same determination with respect to Dr. Friedman under the 2008 RFP as under the 2007 RFP." Disqualification Letter at App. 1. In either instance, NIH's disqualification of Dr. Friedman is ripe for review.

Additionally, the Government argues that the Administrative Procedure Act's ("APA") "final agency action" requirement (from 5 U.S.C. § 704) somehow applies to bid protests brought under 28 U.S.C. § 1491(b). Given the Federal Circuit's conclusion that § 1491(b)(4) incorporates only the APA's review standards under 5 U.S.C. § 706, it is questionable whether Congress intended to incorporate the "final agency action" requirements from the APA. *See PGBA, LLC v. United States*, 389 F.3d 1219, 1226 (Fed. Cir. 2004). Just as for jurisdiction, this Court should look to the provisions of 28 U.S.C. § 1491(b)(1) – it is that provision and not 5 U.S.C. § 704 that governs jurisdiction and ripeness.

Nevertheless, assuming *arguendo* that CNAC is required to show some "agency action" as such, the issuance of the Disqualification Letter and the Ethics Opinion by NIH constitutes "agency action" within the meaning of the APA:

> [A]gency action includes the whole or a part of an agency rule, order, license, sanction, relief, or the equivalent or denial thereof, or failure to act, and also that order means the whole or a part of a final disposition . . . of an agency in a matter other than rule making . . . . According to the legislative history of the APA:
>
> The term agency action brings together previously defined terms in order to simplify the language of the judicial-review provisions of section 10 and to assure the complete coverage of every form of agency power, proceeding, action, or

> inaction. In that respect the term includes the supporting procedures, findings, conclusions, or statements or reasons or basis for the action or inaction.

*Federal Trade Comm'n v. Standard Oil Co.*, 449 U.S. 232, 238 n.7 (1980) (internal citations and quotations omitted). In determining whether an administrative action is subject to judicial review, the Court must examine the finality element in a pragmatic way. *Abbott Labs. v. Gardner*, 387 U.S. 136, 149 (1967).

The Government substantially relies upon three cases, *Standard Oil*, *Clarke*, *and Robishaw Engineering*, for its argument that NIH's Disqualification Letter and Ethics Opinion do not constitute final agency action that is ripe for judicial review. *See* Govt Brief at 22. In *Standard Oil*, the court stated that the FTC's "reason to believe" a violation had occurred was not a definitive statement of its position, but merely a "threshold determination" that future inquiry was warranted. 449 U.S. 232 (1980). Similarly, in *American Land Title Association v. Clarke*, 743 F. Supp. 491 (W.D. Tex. 1989), the court found that the challenged letters did not "represent a definite statement of the OCC's position as they were written by subordinate officials in response to hypothetical questions, and do not have the status of law as they do not impose an obligation, deny a right, or fix some legal relationship as a consummation of the administrative process." *Id.* at 494 (quotation omitted)). The Government's reliance on this case law is misplaced. In direct comparison to the cases cited by the Government, the Disqualification Letter and Ethics Opinion were not "written by subordinate officials in response to hypothetical questions." Rather the Disqualification Letter and Ethics Opinion were written directly in response to CNAC's first bid protest and this Court's Order concerning NIH's prior determination that Dr. Friedman was barred by the post-employment provisions of § 207. The disqualification of Dr. Friedman is not based on "hypothetical questions," but rather was made by NIH in direct response to CNAC's proposal for the Montgomery County Contract and in

direct response to CNAC's status as a potential bidder on the 2008 RFP. Furthermore, NIH's arbitrary and capricious ethics evaluation specifically denies CNAC the right to compete for or receive award of the Montgomery County Contract.

The Government further relies on *Robishaw Engineering, Inc. v. United States*, 891 F. Supp. 1134, 1151 (E.D. Va. 1995), for the principle that there was no final agency action where the Army, "explicitly solicited reaction and submission of further information from Robishaw." *Id.*; *see also* Govt Brief at 22. Again, the Government's reliance is misplaced. As discussed above, the Government cannot maintain its legally and logically inconsistent positions that, although it has concluded Dr. Friedman is permanently banned by § 207, it is willing to consider and arguments to the contrary. *See* Govt Brief at 12 ("On March 18, 2008, the agency completed its reconsideration of its previous ethics decision that was rendered only with respect to CNAC's proposal submitted pursuant to the 2007 RFP."). Like the regulations at issue in *Abbot Laboratories*, the Disqualification Letter and Ethics Opinion are "definitive" statements of NIH's position, and have a "direct and immediate . . . effect on the day-to-day business" of CNAC, the complaining party. *Abbott Labs. v. Gardner*, 387 U.S. at 151-52.[2]

Finally, the Government asserts that the Contracting Officer's contradictory statements regarding Dr. Friedman's disqualification constitute "statements [that] are consistent with the negotiation process contemplated in the FAR . . . ." Govt Brief at 19. The Government relies

[2] Furthermore, CNAC has never alleged that "litigation expense" is its irreparable harm. *See* Govt Brief at 21 (quoting *Standard Oil.*, 449 U.S. at 244 ("[m]ere litigation expense, even substantial and unrecoupable cost, does not constitute irreparable injury.") Rather as CNAC alleges in its Brief, CNAC has been irreparably injured by NIH's flawed analysis of the post-employment provisions of § 207, the result of which has been to deny CNAC fair and lawful consideration or award of the Montgomery County Contract. CNAC Brief at 33. Both of these injuries have been found to be irreparable. *See Dairy Maid Dairy, Inc. v. United States*, 837 F. Supp. 1370, 1381 (E.D. Va. 1993); *Seattle Security Servs., Inc. v. United States*, 45 Fed. Cl. 560, 571 (1999).

upon the FAR for the notion that the ethics evaluation of Dr. Friedman is analogous to ordinary contract discussions, arguing that "[t]hese negotiations may include bargaining. Bargaining includes persuasion, alteration of assumptions and positions, give-and-take, and may apply to price, schedule, technical requirements, type of contract, or other terms of a proposed contract." Govt Brief at 19, 20 (quoting FAR 15.306(d)). Again, the Government's position that a lifetime ban under § 207 is similar to a contract "negotiation" evidences a misunderstanding and misapplication of the law. When the post-employment restrictions of 18 U.S.C. § 207 are applied lawfully and rationally, a *lifetime, permanent ban* on an employee is just that, a lifetime permanent ban. Additionally, the Government's statement that "rather than making a judgment on the potential ethics issue at this time, the agency communicated its concerns to CNAC at the early stage of the pending procurement" completely ignores that NIH's recent ethics determination is directly in response to CNAC's prior successful bid protest and this Court's January 3, 2008 Order. Furthermore, any characterization now of NIH's position on the disqualification of Dr. Friedman as "negotiations" is not backed by the agency's prior conduct in these proceedings. As detailed in CNAC's Complaint, during the 2007 RFP, NIH never conducted discussions with CNAC to discuss Dr. Friedman's post-employment status or its implications under 18 U.S.C § 207. NIH waited to raise this issue for the first time only after it informed CNAC that it had not been chosen for award.

## III. NIH'S ETHICS EVALUATION OF DR. FRIEDMAN IS ARBITRARY, CAPRICIOUS, AND CONTRARY TO APPLICABLE LAW, AND THUS SHOULD BE SET ASIDE

As set forth more thoroughly in CNAC's prior submissions to this Court, NIH's conclusion that Dr. Friedman is permanently barred by 18 U.S.C. § 207 "entirely fail[s] to consider an important aspect of the problem" and runs "counter to the evidence before the agency." *Motor Vehicle Manufacturers Ass'n v. State Farm Mutual*, 463 U.S. 29, 43 (1983); *see*

*also Impresa Construzioni Geom. Domenico Garufi v. United States*, 283 F.3d 1324, 1333-34 (Fed. Cir. 2001) ("[T]he test for reviewing courts is to determine whether the contracting agency provided a coherent and reasonable explanation of its exercise of discretion . . . .").

The Government attempts to shield NIH's actions under the allegedly "wide discretion" provided by 48 C.F.R. § 1.602-2. Govt Brief at 25-31. This position has several defects. First, the Government neglects to mention that § 1.602-2 also requires that the Government "[e]nsure that contractors receive impartial, fair, and equitable treatment," which NIH has demonstrably failed to do in this circumstance. *See* 48 C.F.R. § 1.602-2(b). Second, the Government's invocation of "wide discretion" under 48 C.F.R. § 1.602-2 is reviewed under the same standard of reasonableness as any other bid protest matter. *See IGIT, Inc.*, B-271823, Aug. 1, 1996, 96-2 CPD ¶ 51, at 4, 7 (Comp. Gen. 1996) (concluding that the agency acted unreasonably in excluding an offeror from competition under § 1.602-2). Thus, the question for this Court remains whether NIH's Ethics Decision was reasonable.

The emails just produced by the Government cast further doubt upon the rationale employed by NIH in disqualifying Dr. Friedman from participating in NCS as NIH's PI. The Government now asserts that, based upon "early expressions of interest," it was reasonable for NIH to conclude that the NCS was "one matter." However, the new e-mails produced by the Government actually support CNAC's contention that the RFPs for the Vanguard Centers and the Study Center were different particular matters involving different specific parties. Furthermore, these emails make it evident that the NCS was still in its "planning phase" after November 16, 2004, the date that NIH asserts NCS entered its "contracting phase." For example, by email dated January 18, 2005, Ms. Virginia DeSeau, the prior Contracting Officer

for NCS, was asked to send information regarding how to submit a proposal to serve as a Study Center for the NCS. In response, Ms. DeSeau stated that:

> Following the awards of the Vanguard Centers, the NCS will take information learned from those sites and prepare new solicitations for the awards of the Study Centers. I think that you are asking for information about the future acquisitions, which will not be available for about 1-2 years.

*See* Government Appendix at 2271. Furthermore, by email dated February 1, 2005, Ms. DeSeau stated:

> First, the Study Protocol and Specific measurements are not yet finalized. The Study protocol is in the earliest drafting states and will not be completed until contracts [for Vanguard Centers] have been awarded and a Steering Committee is in place.

*Id.* at 2274. This factual evidence, coupled with the evidence before this Court in CNAC's prior submissions, support CNAC's argument that NCS was not one particular matter which involved the same specific parties under the 2007 RFP as it did during Dr. Friedman's tenure as a Government employee. NIH's conclusions to the contrary are "counter to the evidence before the agency." *Motor Vehicle Manufacturers Ass'n v. State Farm Mutual*, 463 U.S. at 43; see also *OMV Med., Inc. v. United States*, 219 F.3d 1337, 1343 (Fed. Cir. 2000) (under the arbitrary and capricious standard, a reviewing court must "sustain the agency action in question if the action 'evinces rational reasoning and consideration of relevant factors[]'") (quoting *Advanced Data Concepts, Inc. v. United States*, 216 F.3d 1054, 1058 (Fed. Cir. 2000)). Furthermore, the Contracting Officer's statement in NIH's Disqualification Letter that "I have not made a determination as to whether or not to [sic] CNAC would be eligible for award pursuant to the 2008 RFP," suggests the tenuous nature of NIH's determination that the whole of 18 U.S.C. § 207 constitutes one particular matter involving specific parties. *See Commercial Energies, Inc. v. United States*, 20 Cl. Ct. 140, 145 (1990) ("[C]ourts should not substitute their judgments for

pre-award procurement decisions *unless* the agency clearly acted irrational or unreasonably.") (citations omitted) (emphasis added). In this instance, the agency has acted irrationally and unreasonably.

In this regard, NIH has *never* appropriately considered the implementing U.S. Office of Government Ethics regulations concerning how the post-employment restrictions of 18 U.S.C. 207(a) should be applied. *See* Govt Brief at 38. That it consulted and has cited the statute related to exceptions for scientific and technical communications *for otherwise disqualified* persons under 18 U.S.C. § 207(j)(5) is beside the point. CNAC has argued that NIH has never properly consider the general rule, embodied in the implementing regulations, that technical work on a project should not later bar that employee from working on contracts that implement that work, because work related to technical design generally does not rise to the level of a "particular matter involving a specific party or parties, which is discussed in 5 C.F.R. § 2637.201(c). The Government has not addressed this argument. Specifically, 5 C.F.R. § 2637.201(c)(2) states:

> In connection with technical work, participation in projects generally involving one or more scientific or engineering concepts, in feasibility studies, or in proposed programs prior to the formulation of a contract will not restrict former Government employees with respect to a contract or specific programs entered into at a later date.

This regulation covers different ground than the statutory, technical/scientific exception in § 207(j)(5), which can be used to allow otherwise "banned" former Government employees to communicate technical/scientific information after their Government service. Contrary to the Government's assertions, CNAC has never asked NIH to create an exception for Dr. Friedman under 207(j)(5), rather CNAC has requested – from the beginning of these proceedings – only

that NIH properly interpret and the apply the law as informed by the operative regulations. *See* CNAC Brief at 25.

## IV. THIS COURT HAS AUTHORITY TO GRANT "ANY RELIEF" IT DEEMS NECESSARY

Congress has vested this Court with authority under 28 U.S.C. § 1491(b)(2) to grant "any relief" that the Court considers proper. *Id.*[3] In this case, CNAC's only adequate remedy is permanent injunctive relief. Furthermore, this Court possesses equitable authority to award a contract to a bidder, where but for the unlawful conduct of the contracting officer, the contract would have gone to the unsuccessful bidder. In appropriate cases, this Court has exercised that authority. *See* CNAC's Br. at 35-36 (citing cases).

In this instance, despite having two opportunities to do so, NIH has failed to rectify its prior arbitrary and capricious decision to disqualify Dr. Friedman pursuant to 18 U.S.C. § 207. Accordingly, the Court should exercise its sound discretion and authority here by directing NIH to award the Montgomery County Contract to CNAC, or by precluding NIH from awarding the Montgomery County Contract to any offeror other than CNAC.

---

[3] And, it would be hard to believe that by "any relief," Congress intended this Court should have less discretion than it gave the Government Accountability Office under the Competition in Contracting Act. *See* 31 U.S.C. § 3554(b)(1)(E) (noting that the GAO has authority to recommend that an agency "award a contract consistent with the requirements" of procurement law and regulation).

## V. CONCLUSION

For the foregoing reasons, CNAC respectfully requests that this Court grant CNAC's request for declaratory and injunctive relief and deny the Government's motions.

Dated: April 21, 2008

Respectfully submitted,

s/ Alex D. Tomaszczuk by s/ Daniel S. Herzfeld
Alex D. Tomaszczuk
**PILLSBURY WINTHROP**
**SHAW PITTMAN LLP**
1650 Tysons Boulevard
McLean, VA 22102-4859
(703) 770-7940
(703) 770-7901 (fax)

Counsel for The CNA Corporation

*Of Counsel:*
Daniel S. Herzfeld
**PILLSBURY WINTHROP**
**SHAW PITTMAN LLP**
1650 Tysons Boulevard
McLean, VA 22102-4859

Caroline L. Plant
**PILLSBURY WINTHROP**
**SHAW PITTMAN LLP**
725 South Figueroa Street, Suite 2800
Los Angeles, CA 90017-5406