**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| THE CNA CORPORATION, | ) | |
| | ) | No. 08-249C |
| Plaintiff, | ) | |
| | ) | (Judge Horn) |
| v. | ) | |
| | ) | |
| | ) | |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT'S RENEWED MOTION TO DISMISS**
**IN RESPONSE TO DECLARATION OF STEPHEN BROYHILL**

Pursuant to this Court's instructions during oral argument, held April 22, 2008 on the parties' dispositive motions, plaintiff, The CNA Corp. ("CNAC"), filed, on April 23, 2008, the Declaration of Stephen Broyhill (hereinafter the "Broyhill Declaration"). We respectfully file this response pursuant to the Court's order, during that same hearing, permitting the Government until 10:00 a.m. on April 24, 2008 to do so. As explained in more detail below, the Broyhill Declaration, far from curing CNAC's fatal jurisdictional defect in this case, demonstrates that CNAC is not an "interested party" as that term has been defined by the United States Court of Appeals for the Federal Circuit. Accordingly, pursuant to Rule 12(b)(1) of the Rules of United States Court of Federal Claims ("RCFC"), we renew our motion to dismiss for lack of subject matter jurisdiction.[1]

[1] In so doing, however, we do not abandon any other grounds for dismissal upon which we moved in our opening April 17, 2008 motion.

## I. CNAC Must Demonstrate That It Has A "Substantial Chance" Of Securing A Contract Award Absent The Challenged Government Conduct

As we argued in our prior submissions to this Court, see Def. Mot. at 15-17 and Def. Resp. at 4-5, "[t]o establish standing, interest in the specific procurement and capability to compete, cannot be inferred." Infrastructure Defense Technologies, LLC v. United States, -- Fed. Cl. --, 2008 WL 1047660, *12-13 (April 7, 2008) (discussing Myers Investigative & Security Svcs., Inc. v. United States, 275 F.3d 1366, 1370 (Fed. Cir. 2002)). Thus, in Myers, the Federal Circuit held not only that the "'party invoking federal jurisdiction bears the burden of establishing [the] elements [of standing,]'" but also reaffirmed that "a potential bidder must establish that it ha[s] a substantial chance of securing the award in order to establish standing." 275 F.3d at 1367-70 (quoting Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992)).

Indeed, notwithstanding what CNAC would have this Court believe, AFGE did not alter the Federal Circuit's "substantial chance" test. 275 F.3d at 1370 (discussing Am. Fed'n of Gov't Employees v. United States, 258 F.3d 1294, 1298 (Fed.Cir.2001), and concluding "the substantial chance rule continues to apply"). We note, in that regard, that Myers addressed whether the plaintiff in that case had "standing to challenge the award of sole source contracts by the United States to a contractor other than [the plaintiff]." 275 F.3d at 1368. Thus, in that case, the plaintiff effectively was barred from the procurement, just as CNAC alleges it has been barred from the 2008 RFP. Nonetheless, the Federal Circuit held that "Myers bore the burden of establishing that it had a substantial chance of receiving the awards." Id. ("The mere fact that it might have submitted a bid . . . is not sufficient.").

Finally, in any event, CNAC agreed with our view of the standing requirement in its motion for a preliminary injunction. See Pl. Mot. for P.I. at 5 (quoting Data Gen. Corp. v.

Johnson, 78 F.3d 1556, 1562 (Fed. Cir. 1996), and conceding that "[t]o establish prejudice, a protestor must show 'that there was a 'substantial chance' it would have received the contract award but for the alleged error'").[2]

II. The Broyhill Declaration Demonstrates That CNAC Is Not An "Interested Party"

The Broyhill Declaration only confirms what we have suspected – and CNAC has admitted – throughout this dispute: CNAC nebulously may intend to submit a proposal, but it cannot, in fact, compete for an award under the 2008 RFP. See Pl. Br. at 2 (NIH's actions "have irreparably harmed CNAC's ability to compete for award under the 2008 RFP."); id. at 10 (CNAC's loss of team members is "making it very difficult for CNAC to prepare for or respond to the 2008 RFP").[3]

For example, while Mr. Broyhill indicates that "CNAC intends to submit a proposal in response to [the 2008 RFP,]" Broyhill Declaration at ¶ 2, he concedes that "several of CNAC's original teammates indicated that they would seek other teaming options for the 2008 RFP." Id. at ¶ 3. Indeed, only "one of [CNAC's] original four teammates is still available to resubmit a proposal for the NCS Montgomery County, Maryland location on the 2008 RFP." Id. at ¶ 4. Thus, while CNAC may be "working . . . to retain the participation of other original teammates

[2] We also observe, once again, that Judge Braden's standing analysis in Red River Serv. Corp. v. United States, 60 Fed. Cl. 432 (2004), is anomalous, and has been rejected explicitly by at least one other judge of this Court. See Def. Mot. at 15-17 (discussing Red River and Scott v. United States, 78 Fed. Cl. 151, 154 (2007)).

[3] See also, e.g., Pl. Br. at 34 ("CNAC has been placed in the difficult position of having to identify and replace lost talent, on an extremely tight schedule.").

and also to identify replacement teammates, as necessary[,]" it apparently has not been able to do so. Id.

In sum, it is now clear that the Government is correct that the reason CNAC requires a so-called "directed award" is because that is the only means by which CNAC can hope to perform under the 2008 RFP. Id. at ¶ 5 ("CNAC has received assurances from all four of its teammates . . . that they will remain on the [CNAC] team in response to a directed award . . . (emphasis added)). Standing (i.e., "interested party" status), however, does not – and cannot – depend upon the type of relief requested by a plaintiff. That is precisely the point we made before this Court at oral argument and, moreover, is the very reason underlying the Court's invitation to CNAC to submit a declaration.[4] However, instead of confirming CNAC's "substantial chance" of receiving a contract award under the 2008 RFP, the Broyhill Declaration merely demonstrates that CNAC will not be able to compete for such an award, but rather must have a contract handed to CNAC via judicial fiat.

## III. NIH Has Received Expressions Of Interest From Other Potential Offerors, Under The 2008 RFP, With Respect To The Montgomery County, Maryland Study Center

As we argued in both our opening motion and our response brief – as well as during oral argument – this Court cannot direct the agency to award a contract to CNAC under the 2008 RFP. See Def. Mot. at 39-41; Def. Resp. at 12-13 (distinguishing cases upon which CNAC

[4] Notwithstanding this response, we renew our objection to the Court's permitting CNAC yet another opportunity to demonstrate that is an "interested party." The Court's April 10, 2008 scheduling order permitted CNAC to file any necessary affidavits in support of its motion for injunctive relief, something CNAC declined to do. Instead, CNAC should have been held solely to the legal arguments presented in its briefs.

relies, and explaining that, in each of those cases, "the successful plaintiff at least had submitted a bid or proposal").[5]

In support of our position with respect to a directed award – and in response to one of the Court's questions during oral argument – we attach hereto a declaration from the contracting officer, Ms. Elizabeth J. Osinski. Ms. Osinski confirms that NIH, indeed, has received expressions of interest from two other offerors that intend to submit proposals for the Montgomery County, Maryland study center pursuant to the 2008 RFP. Osinski Declaration at ¶¶ 2-3. Moreover, one of those potential offerors plans to employ "individuals or entities that were named in CNAC's technical proposal on the 2007 NCS procurement." Id. at ¶ 4. The other entity that formally has expressed interest in the Montgomery County, Maryland study center itself submitted a proposal under the 2007 RFP. Finally, there is a possibility that additional, but currently unknown, offerors may yet submit proposals for that study center. Id. at ¶ 5.

## CONCLUSION

For the above reasons, we respectfully request that this Court dismiss this case for lack of subject matter jurisdiction and, in the alternative, refuse to direct a contract award to CNAC, should the Court reach the merits of the dispute and not enter judgment for the United States.

Respectfully submitted,

JEFFREY S. BUCHOLTZ
Acting Assistant Attorney General

JEANNE E. DAVIDSON
Director

[5] We once again object to this Court granting any other form of relief that CNAC requested in its complaint, but for which CNAC has not moved and, indeed, has long since abandoned.

s/ Deborah A. Bynum
DEBORAH A. BYNUM
Assistant Director

s/ Matthew H. Solomson
MATTHEW H. SOLOMSON
Trial Attorney
Commercial Litigation Branch
Civil Division, U.S. Department of Justice
1100 L Street, N.W.
Washington, DC 20530
Tele: (202) 305-3274
Fax: (202) 514-8624

April 24, 2008

Attorneys for Defendant